IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2004

### STATE OF TENNESSEE v. TONYA LYNN JOWERS

**Appeal from the Circuit Court for Henderson County**
**No. 02-047     Donald Allen, Judge**

---

### No. W2003-01697-CCA-R9-CD  - Filed June 4, 2004

---

The defendant, Tonya Lynn Jowers, appeals the Henderson County Circuit Court's order upholding the prosecutor's denial of pretrial diversion for the charge of theft of property valued more than $10,000 but less than $60,000, a Class C felony. She claims that the prosecutor abused his discretion by failing to consider all the relevant factors. We affirm the trial court's order denying pretrial diversion.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Carthel L. Smith, Jr., Lexington, Tennessee, for the appellant, Tonya Lynn Jowers.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. Woodall, District Attorney General; and William R. Martin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's stealing money from her employer, Hayes Small Engine, Inc. ("Hayes"), in July and August 2002. The defendant requested pretrial diversion, and the trial court ordered the Tennessee Board of Probation and Parole to conduct a background investigation of the defendant. In a February 4, 2003 letter, the prosecutor denied the defendant's application for pretrial diversion based on the following reasons:

> [1] I place no weight on the defendant's age. Tonya is forty-one years of age and has sufficient experience in life to appreciate the wrongfulness of her conduct and conform her conduct to society's expectations.

[2] I place very slight weight in favor of diversion on Tonya's academic record. She is apparently enrolled in college but her past history of dropping out together with the lack of specific information as to actual course work, grades and other dates causes me to place minimal weight on this factor.

[3] I weigh Tonya's employment history against diversion. Tonya has a history of being terminated or resigning and the present charge was committed against her employer.

[4] I place significant weight on the fact that Tonya committed a breach of confidence in committing this crime. Her employer trusted her with certain financial obligations and she used this trust to commit theft.

[5] Tonya was on bond or other form of release when she committed this crime. Tonya had two worthless check charges pending in General Sessions Court when she committed this crime. I weigh this factor heavily against diversion.

[6] Tonya's crime was not a crime of impulse but required considerable effort of planning and took place over a period of several months. I weigh this against diversion.

[7] It is apparent from the record that Tonya used stolen money to pay off two pending worthless checks. . . . The record demonstrates that both checks were paid off during the time period Tonya was stealing from her employer. I weigh [this] factor heavily against diversion.

[8] It is apparent that lesser means than full prosecution have failed to correct Tonya's criminal behavior. The General Sessions Court passed two worthless checks in order for Tonya to pay off the checks and court costs. . . . While this type of "informal diversion" in no way disqualifies Tonya from seeking pretrial diversion, it does demonstrate that . . . methods other than full criminal prosecution are not likely to succeed in Tonya's case and I weigh this against diversion.

Having therefore considered and weighed the foregoing, I have concluded . . . that it would not be in the best interests of society to allow her to participate in pretrial diversion.

In response to the prosecutor's denying diversion, the defendant sent the prosecutor a letter, proof of enrollment at Union University, and a transcript showing her coursework and grades. In the letter, the defendant claimed that she had only one worthless check charge pending against her at the time of the crime in question and that the charge had been dismissed because she had paid the check. The defendant also noted that the crime in question occurred over a two-month period, not over several months as the prosecutor had stated in his February 4 letter. In a written response, the prosecutor stated that he had considered the defendant's new information but that he still believed pretrial diversion should be denied. Specifically, he stated that the defendant's education weighed against her request for pretrial diversion because she had used special skills learned through her business and accounting courses to commit the crime.

In response to the prosecutor's second denial, the defendant sent him ten letters written by her counselor, high school teacher, and friends in support of her receiving pretrial diversion. The prosecutor denied diversion for a third time, stating that the letters had not addressed the defendant's legal troubles and had not realistically assessed her true character. The defendant petitioned the trial court for a writ of certiorari to review the prosecutor's denial of pretrial diversion and submitted a copy of the record upon which the prosecutor based his denial, including the Board of Probation and Parole's pretrial diversion report; the defendant's written statement, victim impact statements, the defendant's academic records from Union University, and the letters written on her behalf.

According to the defendant's diversion report, the defendant graduated from high school in 1979 and attended Vanderbilt University for a couple of years before dropping out. In the report, the defendant stated that she enrolled in Union University in 1998 to study accounting but dropped out after only one semester. She then re-enrolled in the fall of 2001 and was still enrolled at the time of the report in December 2002. The defendant stated in the report that she used alcohol occasionally, did not use illegal drugs, and took prescribed medicine for depression. The report shows that before going to work for Hayes, the defendant worked as a bookkeeper for Miller CPA and as a general office manager for Jackson Hewitt Tax Service. According to the report, both employers fired the defendant for her poor job performance. The report also shows that the defendant worked in the real estate business and as a florist. According to the report, the defendant was charged in December 2001 with violating the bad check law but the charge was dismissed in July 2002 when she paid $922.68 to Wal-Mart. The report shows that in June 2002, the defendant again was charged with violating the bad check law and that the second charge was dismissed in October 2002 when she paid Heritage Auctions $1,592.90. The report reveals that the defendant paid $9,000 to the circuit court for restitution in the present case.

In the defendant's typed statement, she stated that she took full responsibility for her actions but that she took the money from Hayes in order to alleviate a financial crisis in her family. She said that she "viewed the funds as an unapproved loan," that she planned to use the money for her family's business, and that she had intended to replace the stolen money. She admitted to filling out inaccurate deposit slips and keeping an inaccurate account balance in Hayes' checkbook but said that she kept an accurate tally of how much money she needed to return to the company. She said that

she felt tremendous shame and guilt for what she had done and that she had not intended to hurt Hayes.

The trial court determined that the prosecutor did not abuse his discretion by denying the defendant's request for pretrial diversion. The trial court noted that the prosecutor considered the circumstances of the offense and the defendant's criminal record, social history, age, and educational and employment background. The trial court also noted that the prosecutor considered and gave great weight to the fact that the defendant had committed the crime after she paid the two bad checks, indicating to the prosecutor that the defendant lacked an amenability for rehabilitation and that granting diversion would not deter her from criminal activity. The trial court noted that the prosecutor also had considered the letters written in support of her receiving pretrial diversion and had determined that diversion would not serve the ends of justice or be in the best interests of the defendant and the public. The trial court concluded that substantial evidence in the record supported the prosecutor's denial of pretrial diversion.

In order to be eligible for pretrial diversion, a defendant must not have been previously granted diversion; must not have a prior misdemeanor conviction in which the defendant served a sentence of confinement or a prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction; and must not be seeking diversion for a Class A or B felony, a sexual offense, driving under the influence, or vehicular assault. T.C.A. § 40-15-105(a)(1)(B)(i)(a)-(c). The decision to grant or deny an application for pretrial diversion is within the discretion of the prosecuting attorney. T.C.A § 40-15-105; State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). In making this determination, the prosecutor should

> "focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant."

Curry, 988 S.W.2d at 157 (quoting State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983)). The prosecutor's response must be in writing, must list the evidence considered, and must point out any factual discrepancies between the evidence upon which the prosecutor relied and that presented in the defendant's application. Curry, 988 S.W.2d at 157. The response must discuss the factors considered by the prosecutor and the weight given to each factor. Id. The fact that a defendant has the burden of showing suitability for diversion does not relieve the prosecutor from the obligation to examine all of the relevant factors and to set forth the required findings. Id.

-4-

The decision of the prosecutor to grant or deny pretrial diversion is presumptively correct and will not be set aside absent an abuse of discretion. Id. at 158; Hammersley, 650 S.W.2d at 356. In reviewing the prosecutor's denial of pretrial diversion, the trial court may consider only that evidence considered by the prosecutor. Curry, 988 S.W.2d at 158. In order to find an abuse of discretion, the trial court must conclude that the record lacks substantial evidence supporting the prosecutor's determination. Id. The trial court "must not re-weigh the evidence, but must consider whether the district attorney general has weighed and considered all of the relevant factors and whether there is substantial evidence in the record to support the district attorney general's reasons for denying diversion." State v. Yancey, 69 S.W.3d 553, 559 (Tenn. 2002). "On appeal, the appellate court is bound by factual findings made by the trial court unless the evidence preponderates against them." State v. Bell, 69 S.W.3d 171, 177 (Tenn. 2002) (citing Curry, 988 S.W.2d at 158). If the facts are undisputed, the underlying issue for determination on appeal remains whether or not, as a matter of law, the prosecutor abused his or her discretion in denying pretrial diversion. State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993). Moreover, "upon review of a denial or grant of pretrial diversion, the Court of Criminal Appeals is limited to considering only the evidence that was considered by the district attorney general." Yancey, 69 S.W.3d at 559-60.

The defendant contends that the prosecutor abused his discretion by denying her application for pretrial diversion because he failed to consider all of the relevant factors. Specifically, she argues that the prosecutor failed to consider her amenability to correction, that pretrial diversion would serve the ends of justice, and that pretrial diversion was in her and the public's best interests. She also contends that the prosecutor improperly gave little weight to her academic status and disregarded the fact that she is planning to graduate from Union University and has a 3.25 grade point average. She also claims that nothing in the record supports the prosecutor's concluding that she used her education in accounting to commit the crime, that she used any elaborate scheme or considerable planning to steal from Hayes, or that she used the money from Hayes to pay off her bad checks to Wal-Mart and Heritage Auctions. Moreover, she points out that the crime was committed over a two-month period, not over several months as the prosecutor stated in his original denial. Finally, she contends that the letters submitted on her behalf, the payment of restitution, and her accepting responsibility for the crime support granting her request for pretrial diversion. The state claims that substantial evidence supports the prosecutor's denying pretrial diversion. We agree with the state.

In the prosecutor's initial denial of pretrial diversion, he concluded that her academic record was entitled to slight weight. After the defendant gave the prosecutor her academic records, he stated that her education weighed against diversion because she had used it to commit the crime. The defendant disputes this, claiming that nothing in the record supports his conclusion. She also disputes the prosecutor's concluding that she used an elaborate scheme and considerable planning to commit the crime and that she committed the crime over several months. However, in the defendant's written statement, she described the crime as follows:

> Yes, deposit slips and the checking balance in the checkbook were
> inaccurate, but when making entries into the daily sales records, I

posted the accurate cash amounts so that I could compare them to my
deposits in order to ascertain how much money needed to be returned.

Financial records submitted by Hayes support the defendant's claim that she committed the theft during July and August 2002. However, using the method she described, the defendant was able to steal over $10,000 during that brief period of time. Also, records reveal that she began stealing from the business after having worked there only one month and stopped taking money only when the company's owner discovered the theft.

Regarding the defendant's prior criminal history, the prosecutor determined that the two bad check charges also supported denying her request for pretrial diversion. The pretrial diversion report shows that the defendant wrote a bad check to Wal-Mart on December 15, 2001, and that she wrote a second bad check to Heritage Auctions on June 29, 2002. On July 30, 2002, while she was working for Hayes, the defendant paid Wal-Mart $922.68 for the first bad check. Despite her claim to the contrary, the prosecutor made a logical assumption that the defendant used money she took from Hayes to pay off the Wal-Mart debt. Moreover, despite having just resolved the bad check charge at Wal-Mart, the defendant continued stealing from Hayes.

Although the defendant claims that the prosecutor failed to consider her amenability to correction, the prosecutor's statements in his first letter of denial demonstrate that he believed that the defendant's stealing from Hayes while having two bad check charges pending against her demonstrated that she lacked an amenability to rehabilitation. We agree. Finally, the defendant argues that the prosecutor failed to consider that the likelihood of pretrial diversion would serve the ends of justice and that pretrial diversion was in the best interests of her and the public. However, in the prosecutor's second letter denying diversion, he stated that diversion would not meet the interests of society in this case. In light of the record, we conclude that the prosecutor and the trial court were justified in denying the defendant's request for pretrial diversion.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE